## ASKEW, ADM'R., VS. COLUMBIA COUNTY.

**TAXES:** *Duty of collector to pay over county revenue in kind; his liability how discharged.*

Under the provisions of sec. 18, Miller's Digest of the Revenue laws, it is the duty of the collectors to pay into the county treasury the funds collected by them as county revenue, in kind, and, upon failure to do so, they are subject to the penalties imposed by that section. But where a collector collected a bridge tax in currency and paid it to the treasurer in county warrants, his official liability therefor ceased, because the law makes the warrants a legal tender by the collector in payment of his indebtedness on account of the tax.

APPEAL from *Columbia* Circuit Court.

Hon. J. K. YOUNG, Circuit Judge.

*Clark & Williams*, for appellants.

*Smoote & Kelso, contra.*

ENGLISH, CH. J.:

In the year 1873, Claiborn S. Barron, Sheriff and Collector of Columbia County, filed an account for settlement with the Board of Supervisors of the County, in which he charged himself with "this amount bridge taxes per assessment for 1872, $1359.84," and some small items not material to be stated, and credited himself with sundry small items not controverted, and with "Treasurer's receipt this day filed $1,252.27," which balanced his account.

James A. Jordan and Andrew Williams, representing themselves to be the holders of a warrant for $432, drawn on the Treasurer, 23d December, 1871, for bridge purposes for the year 1872, filed exceptions to the account of Barron on the grounds, in substance, that he had collected the whole of the tax assessed for bridge purposes for the year 1872, in United States Currency, and paid over to the County Treasurer the above sum of $1,252 (for which he obtained his receipt) in bridge scrip, when, by law, he should have paid it in United States Currency.

The Board of Supervisors rendered judgment against Barron, and he appealed to the Circuit Court.

After the appeal, and before the case was tried in the Circuit Court, Barron died, and Benj. F. Askew, his admistrator, was substituted as defendant.

The cause was tried *de novo* before the court sitting as a jury, at the April Term, 1876. After reading the record of the proceedings in the matter before the Board of Supervisors, the plaintiff (Columbia County) introduced Thomas J. Balger as a witness, who testified that Claiborn S. Barron was sheriff and collector of said county for the year 1872, and he was his assistant, and knew that Barron collected all of the bridge tax for that year in United States Currency but about $25.

Plaintiff also introduced W. B. McNeill as a witness, who testified that he sold Barron about $300 in bridge scrip or bridge warrants on Columbia County for that year, which was then worth from 75c to 80c on the dollar.

To all of the above testimony defendant objected as irrelevant and illegal, and the court overruled the objection.

The defendant then, after proving the hand-writing of Booth, the county treasurer, introduced the following receipt:

"Received, Magnolia, Arkansas, June 19th, 1873, of C. S. Barron, collector for the County of Columbia, in the State of Arkansas, the full sum of one thousand two hundred and fifty-two dollars and twenty-seven cents ($1,252.27), in bridge warrants in full for bridge tax for the year 1872.

DEE R. BOOTH,
Treasurer of Columbia County, Ark."

The above being all of the evidence introduced by the parties, the court found and rendered judgment as follows:

"The court finds from the evidence that Claiborn S. Barron, deceased, was sheriff and collector of the revenues of the County

of Columbia for the year 1872, and, as such collector, he collected for said county for said year on account of bridge tax the sum of $1,227.27 in United States Currency, and attempted to discharge said amount by paying the same into the county treasury in bridge warrants; and that he, as such collector, is entitled, on account of money paid to officers for fees, to a credit of the sum of $342.21, and that the residue of taxes collected on account of said bridge funds for the year 1872, amount to the sum of $885.06.

"And the court is of opinion, and finds and declares the law to be, upon the foregoing findings of facts, that said Claiborn S. Barron, as collector, as aforesaid, ought to have paid said sum of $885.06 into the county treasury of said county in United States Currency to the credit of bridge funds of said county; and that Benjamin F. Askew, as his administrator, ought now to do so, and have return of said sum of $885.06 in bridge scrip or warrants.

"It is therefore considered and ordered by the court, that Columbia County, etc., recover of and from Benjamin F. Askew, as administrator of said Claiborn S. Barron, deceased, the said sum of $885.06 on account of bridge funds of said county in United States Currency, and that he, as such administrator, be, and he is hereby ordered to pay into said treasury of the county the said sum of $885.06 in United States Currency to the credit of bridge funds thereof, and that he, as such admistrator, be and he is hereby authorized and permitted to withdraw, and the treasurer of the county is directed to pay to him, as such administrator, the sum of $885.06 out of any bridge warrants remaining in said treasury."

Judgment is also in favor of the county for costs.

Askew filed a motion for a new trial, which was overruled, and he took a bill of exceptions and appealed to this court.

In *State, use of Chicot County*, v. *Rives et al.*, 12 Ark. (7 Eng.), 721, the collector of Chicot County was sued on his bond for a sum due to the county on settlement, and he pleaded a tender of county warrants. Held, that county warrants issued under a statute providing for their issuance, and making them receivable in payment of county taxes, debts, etc., accruing to the county, were a legal tender, by the collector, in payment of the amount due from him to the county for revenue collected, such tender not falling within the provisions of the Constitution declaring that nothing but gold and silver coin shall be made a legal tender, etc., and overruling *Gaines* v. *Rives*, 3 Eng., 220.

This decision, which has never been overruled, is relied on by appellant to show that his intestate had the legal right to pay to the treasurer of Columbia County, in county warrants, the amount due from him to the county, on account of the bridge tax collected by him for the year 1872, and that he was not legally obliged to pay the same in United States Currency, though it was proven that he collected the tax in such currency.

On the other hand, it is insisted for appellee that inasmuch as the tax was collected in currency, the collector was obliged to pay it over in currency, and could not discharge himself by paying it in county warrants.

That the bridge tax, being for part of the ordinary expenses of the county, could have been paid, by the tax-payers, in county warrants under the revenue laws in force in 1872, does not admit of doubt. Acts of 1871, p. 58. Gantt's Digest, sec. 610.

But the question recurs, if the collector collected the tax in currency, could he discharge himself otherwise than by paying it over to the county treasurer in currency?

Counsel for appellee insist that he could not, and cite sec. 18, of Miller's Digest of the Revenue Laws, which is the same as sec. 5168 of Gantt's Digest, which is a part of the Act of March 5th, 1867.

The whole of the Act, which we divide into clauses, is as fol-
lows:

(Clause 1.)   "The collectors of the county revenue of this
State shall pay into the county treasury, in kind, all money col-
lected by them, whether specie, United States paper currency,
warrants or scrip, as authorized by law to be received; (Clause
2) each collector, sheriff or other officer, collecting county reve-
nue, shall pay over to the county treasury, warrants and county
scrip at the price and discount at which he shall have received
them as county revenue; (Clause 3) each collector, sheriff or
other officer shall make oath before the clerk of the County
Court, at what discount he shall have received said warrants and
scrip; (Clause 4) and each and every collector, sheriff or other
officer, who shall fail to pay over to the county treasury, all
money received, as provided by this Act, shall forfeit to the
county the sum of $100 for each violation, to be recovered upon
conviction under indictment, and shall not be eligible to hold
any office of trust in the State."   Acts of 1866-7, p. 201.

Sec. 5168 of Gantt's Digest, is made up of the first and last
clauses of the above Act, the second and third clauses being
omitted.

By sec. 22 of "An Act to amend the Revenue Laws of the
State," approved March 5th, 1875 (Acts of 1874-5, p. 222), it
was made the duty of the Auditor of the State to digest the rev-
enue law as contained in Gantt's Digest with that act; and hence
the Auditor carried into his (Miller's) Digest as sec. 118, sec.
5168 of Gantt's Digest, made up of parts of the Act of 5th
March, 1867, as above indicated.

The second and third clauses of the Act of March 5th, 1867,
were omitted by the digester (Mr. Gantt) because, perhaps, as
written, they are absurd.   The substance of the second clause is
that the collector, collecting county revenue, shall pay over to

the county treasury, warrants and county scrip at the price and discount at which he shall have received them as county revenue; and the third clause, in substance, requires him to make an oath before the clerk, at what discount he shall have received said warrants and scrip.

Now in all cases where warrants and scrip are legally receivable in payment of taxes, they are receivable at par, and the collector is obliged so to receive them, and it is absurd to assume that he could exact them, or that the tax-payers would pay them in at a discount.

We may suppose that it was the intention of the legislature in passing the clauses of the Act of 5th of March, 1867, which have been omitted in the Digest, to prevent the collectors from speculating with the public revenue by purchasing up warrants and scrip at a discount, and paying them over in their settlements at par, and to require them to give the public, whose agents and trustees they are, the benefit of profits so made. But if such was the intention of the legislature it was so badly expressed as not to be manifested by the clauses of the act in quession, and hence they have proved to be of no practical benefit, and been treated as nugatory.

Whether Barron purchased at a discount any of the warrants which he paid over to the treasurer on account of the bridge tax, does not appear from the evidence.

A witness (McNeill) testified that he sold Barron about $300 in bridge warrants, which were then worth from 75c to 80c on the dollar but he did not state that Barron paid to the treasurer the warrants which he sold him; nor was it proven that he purchased the warrants which he paid to the treasurer at a discount.

The first clause of the Act of 5th of March, 1867, which has been carried into the Digest, remains to be construed:

Askew, adm'r, vs. Columbia County.

"The collectors of the county revenue, etc., shall pay into the county treasury, in kind, all money collected by them, whether specie, United States paper currency, warrants or scrip, as authorized by law to be received.

It is insisted by counsel for appellant that this clause means simply that where the law requires a tax to be collected in specie or United States Currency, the collector must pay it over in such money, and when a tax may, by law, be collected in warrants or scrip, the collector must pay over such warrants or scrip as it may legally be collected in.

Such, in one view, may be the legal effect of the clause, but, looking at the whole act, we are of the opinion that it was the intention of the legislature to require the collectors to pay over in money any tax collected by them from the tax-payers in money, that the public and not the collectors might have the benefit of such money.

So we think that Barron having collected the bridge tax of Columbia County for the year 1872, in currency, should have paid it over to the treasurer in currency.

But failing to do so, what was the penalty? The last clause of the act answers the question. He was subject, on indictment, to pay a fine of $100, etc.

But, nevertheless, we take it to be law that whatever tax may be collected in county warrants, may be paid to the county treasurer in like warrants by the collector, or his sureties, so as to discharge him or them from liability upon his bond therefor, as held in *State, use etc.* v. *Rives, supra.* Because the same law which makes the warrants receivable in payment of the tax, makes them a legal tender, by the collector, in payment of the amount of his indebtedness to the county incurred on account of the tax.

When Barron paid to the treasurer, in bridge warrants, the amount of the bridge tax, and took his receipt therefor, the debt was thereby legally discharged as a debt due to the county, though he may have acted in bad faith in availing himself of warrants to pay the debt, when he had collected money of the tax payers, and may have subjected himself to penalties therefor under the last clause of the Act 5th March, 1867.

Suppose he had not paid the warrants to the treasurer at all, but had filed his settlement with the Board of Supervisors showing himself to be indebted to the county in the sum of $885.06, or any other sum, on account of bridge tax, can it be doubted that he or his sureties, or his administrator, could not have paid that sum to the county in her own warrants, due, and, upon their face, payable in money?

The Circuit Court ordered appellant to pay to the county treasurer $885.06, in United States Currency, without any showing, and none certainly appears in the record before us, that $1, had come into his hands as administrator of Barron. If no appeal had been taken, how was this judgment to be enforced? Not certainly by execution, for none could be issued upon the judgment against the administrator. *Yonley* v. *Lavender*, 27 Ark., 252.

The judgment would have to be certified to the Probate Court as a debt ascertained to be due from the estate to the county, and paid under the order of the Probate Court. *Gist, adm'r.,* v. *Gans,* 30 Ark., 286.

The judgment is reversed, and the cause remanded with instructions to the court below to grant appellant a new trial.